J-S26031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3140 EDA 2022 |

Appeal from the Decree Entered November 8, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000130-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3141 EDA 2022 |

Appeal from the Decree Entered November 8, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000131-2022

BEFORE:  STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED NOVEMBER 02, 2023**

L.S. ("Mother") appeals from the decrees terminating her parental rights

as to her minor children, K.K.S. and K.A.W. (collectively, "Children"). Mother's

counsel has filed an **Anders**[1] brief and a motion to withdraw as counsel. We grant counsel's motion to withdraw and affirm the termination decrees.

A panel of this Court previously summarized the background of this case:

> On January 22, 2021, the Philadelphia Department of Human Services ("DHS") received a general protective services ("GPS") report alleging concerns about Mother's behavioral health and inappropriate discipline of [Children]. On that same date, the police were called to the home for an incident involving Mother and an older sibling of [Children]. While in the home, [Children] whispered to the police that they were afraid and asked them not to leave. [Children] stated that Mother kept a gun in the home, which she had used to threaten them. Pursuant to a search warrant, Mother produced the firearm and the police took possession of it.
>
> While the police were still at Mother's home, the DHS investigator, Kim Hightower, arrived and interviewed [Children]. [C]hildren reported to her that Mother deprives them of food as a form of punishment and hits them with sticks and canes. In addition, [K.K.S.] explained that she was truant from school because Mother made her clean the house. During the ensuing hearing, Ms. Hightower testified that [Children] "appear[ed] to be very thin[, a]s if they were emaciated[.]" Moreover, she stated that Mother neglected to feed K.[A.W.] through a nasogastric tube as was required daily.

**Interest of K.S.**, Nos. 1367 & 1368 EDA 2021, 272 A.3d 473 (Table), 2022 WL 122444, at *1 (Pa.Super. filed Jan. 13, 2022) (unpublished memorandum) (citations omitted).

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **see also In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding **Anders** protections apply to appeals of involuntary termination of parental rights).

The trial court adjudicated Children dependent and removed them from Mother's home. *Id.* at *2. Mother filed an appeal of the order of adjudication and we affirmed. *Id.* at *1.

On February 28, 2022, DHS filed a petition for involuntary termination of Mother's parental rights. A hearing on the petition was held on November 8, 2022. At the time of the hearing, Children were 13 and 17 years old. N.T., 11/8/22, at 17. Although Mother was served with notice of the termination hearing, she did not appear at the hearing. *Id.* at 4.

At the hearing, DHS presented the testimony of the Community Umbrella Agency ("CUA") Case Manager, Jared Burr. Burr testified that Mother's single case plan objectives remained the same throughout the case. They were: maintain contact with CUA, supervised line of sight/hearing visitation at the agency at Children's discretion, complete a parenting capacity evaluation, sign all necessary consents, undergo a Behavioral Health Services ("BHS") assessment and evaluation, participate in family therapy if appropriate, attend the Achieving Reunification Center ("ARC") for parenting, and submit to the Clinical Evaluation Unit ("CEU") for drug screens and assessment. *Id.* at 10-11. Of those objectives, Mother only completed a parenting program at ARC and submitted to one drug screen, which was negative. *Id.* at 11-15, 53, 57. Burr did not know Mother's current housing situation or where she was living. *Id.* at 27. Mother also had not been involved in providing any therapeutic care for Children or meeting their educational

needs, nor had she inquired about those needs throughout the life of the case. *Id.* at 17-18.

Burr further indicated that Mother has not had contact with Children because Children do not want to see her. *Id.* at 16. Burr testified that Children did not want any type of contact with Mother "[d]ue to the trauma they've experienced prior to being adjudicated." *Id.* at 16, 27-28, 33-34. He stated that Children have a PTSD diagnosis due to past trauma from Mother. *Id.* at 17. Burr testified that there have been multiple stay-away orders entered in this case ordering Mother not to have any contact with Children, outside of arranged visitation. *Id.* at 27. The court also had entered stay-away orders for Mother to stay away from the previous CUA case manager and supervisor due to Mother's behaviors. *Id.* at 29-30.

Burr further testified that Children are in kinship care with S.G., who is a family friend. *Id.* at 19. He stated that S.G. wants to adopt Children and treats them like her own family. *Id.* at 19, 21. Burr indicated that S.G. meets all of Children's educational, medical, and therapeutic needs and provides them with love, safety, stability, and support. *Id.* at 19-20. He stated that Children refer to S.G. as "Mom" and have their primary parent-child relationship with her. *Id.* at 20, 34. Since being placed with S.G., Children have excelled in school and extracurricular activities, and K.A.W. no longer needs to be fed through an NG tube. *Id.* at 34-35. Burr also stated that Children's adult brother lives at S.G.'s home so they can be a family unit there. *Id.* at 35-36. Burr opined that it was in Children's best interest to be adopted

by S.G. and it would cause Children significant harm if they were removed from S.G.'s home. *Id.* at 21, 37. Conversely, he testified that Children have not suffered any irreparable harm from their lack of contact with Mother throughout this case. *Id*. at 19-20.

Both Children testified at the termination hearing. They both indicated that it was their desire and intention to be adopted by S.G. *Id.* at 62-63.

At the conclusion of the hearing, the court terminated Mother's parental rights. *Id.* at 69. This appeal followed.

Counsel's *Anders* brief identifies the following issues:

1. Whether this Honorable Court should grant the request of undersigned counsel to withdraw pursuant to *Anders v. California*.

2. Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law by finding the Philadelphia Department of Human Services established by clear and convincing evidence the grounds for termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5) and (a)(8).

3. Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law by holding that the developmental, physical, and emotional needs and welfare of the Children as set forth in 23 Pa.C.S.A. § 2511(b) would be best served by terminating Mother's parental rights.

*Anders* Br. at 4-5 (suggested answers omitted).

Before we consider whether the appeal is frivolous, we must first determine whether counsel has followed the procedures for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without

first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;" 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*).

> Additionally, in the **Anders** brief, counsel seeking to withdraw must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355 n.5 (quoting **Commonwealth v. McClendon**, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, we find that counsel has complied with the above technical requirements. In her **Anders** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies issues that could arguably support the appeal, as well

as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Mother with a copy of the **Anders** brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. **See** Motion to Withdraw, 6/9/23, at ¶ 4, Ex. A. Mother has not responded to counsel's motion to withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

The issues raised in counsel's **Anders** brief challenge the sufficiency of the evidence supporting termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a) and (b).

We review an order involuntarily terminating parental rights for an abuse of discretion. **In re G.M.S.**, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **In re Adoption of S.P.**, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. **In re**

***Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Id.*** (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court found termination proper under subsections 2511(a)(1), (2), (5), and (8), as well as under Section 2511(b). ***See*** Order, 11/8/22. As only one basis for termination under 2511(a) is necessary, we will focus on the court's termination of Mother's parental rights under subsection

2511(a)(1). That subsection provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Under subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008). A parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, the challenge to the sufficiency of the evidence to the termination of Mother's rights pursuant to subsection (a)(1) is frivolous. The trial court

- 9 -

found that Mother demonstrated a settled purpose of relinquishing her parental claim to Children and failed to perform her parental duties for a period of at least six months preceding the filing of the termination petition. ***See*** Trial Court Opinion, filed 4/25/23, at 11. The record supports the court's finding. With the exceptions of completing parenting at ARC and submitting to one drug screen, Mother failed to comply with her single case plan objectives. She did not maintain contact with CUA, complete a parenting capacity evaluation, sign necessary consents, undergo a BHS assessment and evaluation, or obtain a CEU assessment. Additionally, Mother has shown no interest or involvement in Children's needs throughout the life of the case. We perceive no non-frivolous basis on which to challenge the sufficiency of the evidence to support the finding of termination under subsection 2511(a)(1).

We next consider the court's finding that termination was warranted pursuant to section 2511(b). Under section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. ***See*** 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** The court must also examine any pre-adoptive home and any bond between the child and the foster parents. ***In re T.S.M.***, 71 A.3d at 268.

- 10 -

Here, the court found that termination of Mother's parental rights was in Children's best interests. We again find no basis in the record on which to challenge the court's finding. The evidence clearly showed that Children are secure, loved, and thriving in S.G.'s home. Children refer to S.G. as "Mom" and have their primary parent-child bond with her. Conversely, the uncontroverted evidence was that Children are fearful of Mother and do not want any contact with her due to the past trauma they experienced under her care. Thus, there was no reasonable basis on which to challenge the findings that Children do not have a parental bond with Mother and they would suffer no detrimental harm if Mother's parental rights were terminated.

To summarize, we find that the issues raised in counsel's **Anders** brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. We therefore grant counsel's motion to withdraw. Having determined that the appeal is wholly frivolous, we affirm the order terminating Mother's parental rights.

Motion to withdraw as counsel granted. Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/2/2023

- 11 -